*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GROSS, HARRELL, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Thomas E. KRUSE**
Lance Corporal (E-3), U.S. Marine Corps
*Appellee*

**No. 202500370**

_____

Decided: 21 January 2026

Appeal by the United States Pursuant to Article 62, Uniform Code of
Military Justice

Military Judge:
Todd J. Gaston

Before a general court-martial convened at Marine Corps Air Station
Miramar, California.

For Appellant:
*Lieutenant Commander Philip J. Corrigan, JAGC, USN* (argued)
*Lieutenant K. Matthew Parker, JAGC, USN* (on brief)

For Appellee:
*Major Theodore Massey, USMC*

Senior Judge GROSS delivered the opinion of the Court, in which Senior Judge HARRELL and Judge de GROOT joined.

––––––––––––––––––

**PUBLISHED OPINION OF THE COURT**

––––––––––––––––––

GROSS, Senior Judge:

This Government appeal under Article 62(a)(1)(A), Uniform Code of Military Justice (UCMJ),[1] presents the question of whether a convening authority (CA) may refer charges for assault and aggravated assault after the Office of Special Trial Counsel (OSTC) has deferred disposition of domestic violence allegations for the same underlying misconduct. Because we find that the plain language of Article 24a, UCMJ,[2] and the Rules for Courts-Martial (R.C.M.) that govern the referral authority of CAs and the OSTC do not preclude such a referral, we grant the Government's appeal.

## I. BACKGROUND

On 26 September 2024, law enforcement responded to a report of a domestic disturbance at Appellee's residence. Appellee's spouse, R.K., said Appellee had strangled her several times that night and had also thrown her down the stairs. Appellee also allegedly drove while drunk and engaged in drunk and disorderly conduct. The next day, the OSTC notified Appellee's commanding officer that the OSTC was "exercising authority over . . . [a]ll covered offenses and lesser included offenses alleged in [the law enforcement notification to [the OSTC]: Article 128b, Domestic Violence."[3] On 2 October 2024, Appellee's commanding officer issued a military protective order (MPO) to Appellee, prohibiting him from having any contact with R.K. Appellee was subsequently accused of violating the MPO on 12 January 2025.[4]

––––––––––––––––––

[1] 10 U.S.C. § 862(a)(1)(A).

[2] 10 U.S.C. § 824a.

[3] App. Ex. IX at 3.

[4] App. Ex. IX at 7-10, 12-14.

On 20 February 2025, the OSTC sent Appellee's commanding officer a "notice of initial disposition of covered offenses" which stated "the available evidence does not meet the [OSTC's] charging standard . . . ."[5] The notice continued, "Accordingly I have deferred all allegations of covered offenses . . . and all other known and/or related offenses to you for resolution."[6]

Appellee's commanding officer subsequently directed a preliminary hearing under Article 32, UCMJ,[7] and forwarded the charges and specifications to the CA—Commanding General, 3rd Marine Aircraft Wing—for disposition. The CA ultimately referred the following charges to a general court-martial: one specification of violation of Article 92, violation of a lawful order; one specification of violation of Article 113, drunken operation of a motor vehicle; two specifications of violation of Article 128, aggravated assault and assault consummated by a battery; and one specification of violation of Article 134, drunk and disorderly conduct. The charge and specifications under Article 128 were for the same misconduct that was subject to OSTC's review and deferral, and the charge and specification under Article 92 was for violation of the MPO.

Prior to arraignment, Appellee and the CA entered into a plea agreement wherein Appellee agreed to plead guilty to violating the MPO, drunken operation of a motor vehicle, and drunk and disorderly conduct. The CA in turn agreed to refer all charges to a special court-martial and to withdraw and dismiss the charge and specifications under Article 128 without prejudice, to ripen into prejudice upon completion of appellate review.

Prior to arraignment, the military judge sua sponte ordered the Government to respond to four discrete inquiries: (1) whether R.K. was the spouse of Appellee at the time of the offenses charged under Articles 92 and 128; (2) whether a special trial counsel (STC) had determined that a reported offense at issue in the case was a covered offense under R.C.M. 303A; (3) whether a STC had exercised authority over any of the charged offenses pursuant to R.C.M. 303A(b) or (c) as known and related offenses; and (4) whether the STC had deferred any offense.[8] The Government responded as follows: (1) that R.K. was the spouse of Appellee at all relevant times for the charged offenses; (2) that the OSTC had determined that a covered offense–Article 128b, UCMJ, domestic violence was at issue in the case; (3) that the OSTC had asserted authority over "all covered offenses and lesser included offenses"; and (4) that

---

[5] App. Ex. IX at 5.

[6] App. Ex. IX at 5.

[7] 10 U.S.C. § 832.

[8] R. at 6.

the OSTC had deferred all allegations of covered offenses and all other known or related offenses to the CA for resolution.[9]

The military judge then directed the parties to file briefs "on the referral and jurisdictional issue."[10] The Government argued that the CA was not precluded from referring the specifications under Article 92 and 128. The Defense moved to dismiss the charges and specifications, arguing that the court-martial lacked jurisdiction for those offenses because the CA was not authorized to refer the charges.

The military judge heard argument on the Defense motion and issued an oral ruling that is the subject of this appeal. Regarding the charged violations of Article 128, the military judge found that:

> the OSTC determined that [the reported offenses] that involved the accused battering and strangling Ms. R.K. were covered offenses. . . . The OSTC's ultimate deferral of the covered offense back to the commander or convening authority does not then change the OSTC's determination that the reported conduct . . . is a covered offense. That conduct remains a covered offense even after deferral by the OSTC.[11]

Further, the military judge stated, "There is no rule or statute that permits having a separate governmental organization determine that the conduct at issue is no longer a covered offense or that such an organization can sidestep the statutory and rules construct through clever charging decisions."[12]

With respect to the charged violation of the MPO, the military judge said that:

> the OSTC has not determined that the conduct that forms the [basis of that charge] is a covered offense. This is also consistent with the Court's analysis of that offense. There is no indication whatsoever that the conduct at issue in [the Specification] includes the gravamen of [a covered] offense.[13]

The military judge then denied the Defense motion to dismiss the charge and specification for violating a lawful order, but granted the Defense motion

---

[9] App. Ex. IV at 1-2.

[10] R. at 6.

[11] R. at 32.

[12] R. at 33.

[13] R. at 34.

with respect to the assault and aggravated assault specifications. The Government timely appealed.

## II. DISCUSSION

**The Military Judge erred in dismissing the specifications for aggravated assault and assault consummated by a battery.**

*1. Law*

We review issues of statutory interpretation and jurisdiction de novo.[14] "It is a general rule of statutory construction that if a statute is clear and unambiguous—that is, susceptible to only one interpretation—we use its plain meaning and apply it as written."[15] In reviewing a statute, we review the statute as a whole, and sections of a statute should be construed in connection with one another as "a harmonious whole" manifesting "one general purpose and intent."[16]

Article 24a, UCMJ, sets forth the duties and authorities of the OSTC. The statute grants the OSTC "exclusive authority to determine if a reported offense is a covered offense and shall exercise authority over any such offense . . . ."[17] The statute also gives the OSTC discretionary authority "over any offense that the special trial counsel determines to be related to the covered offense and any other offense alleged to have been committed by a person alleged to have committed the covered offense."[18] Finally, the statute says:

> If a special trial counsel exercises authority over an offense and elects not to prefer charges and specifications for such offense . . . a commander or convening authority may exercise any of the authorities of such commander or convening authority under this chapter with respect to such offense, except that such com-

---

[14] *United States v. Badders*, 82 M.J. 299, 302 (C.A.A.F. 2022) (quoting *United States v. Jacobsen*, 77 M.J. 81, 84 (C.A.A.F. 2017)).

[15] *United States v. Tyler*, 81 M.J. 108, 113 (C.A.A.F. 2021) (citing *United States v. Kohlbek*, 78 M.J. 326, 331 (C.A.A.F. 2019); *United States v. Clark*, 62 M.J. 195, 198 (C.A.A.F. 2005)).

[16] *United States v. Quick*, 74 M.J. 517, 520 (N-M. Ct. Crim. App. 2014) (quoting Norman J. Singer, *Statutes and Statutory Construction* § 46:05 at 154 (6th ed. 2000)).

[17] 10 U.S.C. § 824a(c)(2)(A).

[18] 10 U.S.C. § 824a(c)(2)(B).

mander or convening authority may not refer charges and specifications for a covered offense for trial by special or general court-martial.[19]

The term "covered offense" is statutorily defined in Article 1(17), UCMJ, as including an offense under 12 specific articles of the UCMJ, two offenses under Article 134, UCMJ, along with conspiracies, solicitations, and attempts to commit the specified offenses.[20] While Article 128b is a covered offense, Article 128 is not. Article 1 does not include as "covered offenses" lesser included offenses of any covered offense. Nor does Article 1 state that a covered offense includes all conduct that the OSTC determines meets the elements of a covered offense.

The Rules for Courts-Martial track the language of the UCMJ. Rule for Courts-Martial 303A states that the OSTC has "the exclusive authority to determine if a reported offense is a covered offense."[21] Rule for Courts-Martial 306A then provides that once the OSTC "has exercised authority over an offense, only a special trial counsel may dispose of that offense, unless a special trial counsel defers the offense."[22]

Once the OSTC has deferred an offense, R.C.M. 306 says that "each commander has discretion to dispose of offenses by members of that command in accordance with this rule."[23] This authority includes disposition of offenses in accordance with R.C.M. 401, 404, and 407. Both R.C.M. 404 and 407 state that a convening authority may refer charges to court-martial "except for covered offenses and other charges for which a special trial counsel has exercised authority and has not deferred."[24]

*2. Analysis*

The issue in this case centers around the legal import of the OSTC's determination that a reported offense is a covered offense. Appellee argues, and the military judge held, that once the OSTC determines that a reported offense is a covered offense, then only the OSTC has authority to refer charges and specifications arising from the alleged misconduct that formed the basis for the reported offense.

---

[19] 10 U.S.C. § 824a(c)(5).

[20] 10 U.S.C. § 801(17).

[21] R.C.M. 303A(a).

[22] R.C.M. 306A(a).

[23] R.C.M. 306(a).

[24] R.C.M. 404(4); R.C.M. 407(4), (6).

The Government, in turn, argues that once the OSTC defers action on the reported offense, the commander or CA is only limited in that he may not refer charges and specifications for one of the listed covered offenses to special or general court-martial. Thus, the Government argues, a convening authority would be precluded from charging a servicemember with domestic violence if the OSTC declined to refer such a charge but would not be precluded from using the same factual basis for charging the same accused with assault consummated by a battery and aggravated assault of his spouse.

Neither party claims that there is ambiguity in the statute or the Rules for Courts-Martial, and we agree.[25] The language that Congress and the President used to define the authorities of the OSTC and the CA in a case such as this is clear. Either Congress or the President could have limited the ability of convening authorities to refer charges for any offense based on the underlying misconduct of a reported offense that was deemed a covered offense. Neither did. Instead, the only limitation on a convening authority's power to refer a charge to court-martial after deferral by the OSTC is a prohibition on referring charges and specifications for a "covered offense" as defined in Article 1(17).

Neither the UCMJ nor the Rules for Courts-Martial say that the OSTC's determination that a reported offense is a covered offense means that the underlying misconduct may only be charged or treated as a covered offense. There are many circumstances in which a reported offense could be charged as either a covered offense or a non-covered offense. Appellee's case provides one such instance.

The plain language of the statute is clear. Following the OSTC's deferral, the CA "may exercise *any* of the authorities of such a commander or convening authority with respect to such offense, *except* that such commander or convening authority may not refer charges and specifications for a *covered offense* for trial by special or general court-martial."[26] Once the OSTC deferred the covered offenses of domestic violence under Article 128b, the CA regained authority to dispose of the remaining uncovered offenses—including those under Article 128—by referral to a special court-martial, as he did here.

---

[25] Oral Argument Audio at 16:21 (December 18, 2025).

[26] 10 U.S.C. § 824a(c)(5) (emphases added).

### III. Conclusion

After careful consideration of the record, briefs, and argument of appellate counsel, the military judge's ruling is **REVERSED**. The case is returned to the Judge Advocate General for remand to the military judge for further proceedings consistent with this opinion.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court